**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      )
     )
     )
         vs.      )
     )    2:21-cr-394-NR
     )
JAH ZHANEE SUTTON,      )
     )
         Defendant.      )
     )

## <u>MEMORANDUM ORDER</u>

Defendant Jah Zhanee Sutton is charged with conspiring to possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl and possession with intent to distribute 5 kilograms or more of cocaine and 40 grams or more of fentanyl. A significant portion of the drugs at the center of this alleged criminal conspiracy were seized from Ms. Sutton's hotel room at the Fairfield Inn and Suites in New Stanton, Pennsylvania. The search of this hotel room occurred pursuant to a warrant that was obtained only after an initial warrantless entry into the room. According to Ms. Sutton, this warrantless entry violated her Fourth Amendment rights and tainted the warrant that law enforcement later obtained. She now moves to suppress all the evidence obtained from the hotel room.

After careful consideration, the Court finds that exigent circumstances existed to justify the initial warrantless entry. Ms. Sutton argues that law enforcement cannot benefit from this exception to the warrant requirement because they impermissibly created that exigency. But the Court disagrees, and denies Ms. Sutton's motion.

### BACKGROUND[1]

On June 6, 2021, Pennsylvania State Police Trooper Wiskeman and Corporal Isoldi were conducting surveillance for suspected drug activity around several hotels in New Stanton, Pennsylvania. Corporal Isoldi was undercover and parked in an unmarked vehicle in the parking lot of the Fairfield Inn. He was specifically watching the Super 8 motel next door in connection with an ongoing investigation. ECF 73, 12:12-15.

While surveilling the Super 8, Corporal Isoldi observed a Black woman exiting the Fairfield Inn wearing "bright yellow shoes" and engaging in a FaceTime video call. *Id.* at 15:3-9. That woman was Ms. Sutton. *Id.* at 16:16-17. At first, Ms. Sutton's shoes were what drew Corporal Isoldi's attention. *Id.* at 16:1-4. But he also found the fact that she was using FaceTime to be significant because, according to his experience and training, people engaging in drug-trafficking activities like to use FaceTime since it "cannot be tracked like you can track and trace a phone call or a text message." *Id.* at 15:16-23.

Soon after, a white sedan driven by co-Defendant Devell Christian entered the parking lot. *Id.* at 16:25-17:2, 24:20-22. Corporal Isoldi immediately observed that the car had a tinted license-plate cover—a violation of the Pennsylvania Motor Vehicle Code. *Id.* at 17:2-24. Although it had a tinted cover, Corporal Isoldi was still able to read the license plate number, so he asked Trooper Wiskeman to run a search. *Id.* at 17:2-8. After running the search, Trooper Wiskeman reported that the car had once been involved in a highway interdiction traffic stop near the New York border. *Id.* at 17:8-12. During the stop, a large amount of U.S. currency was discovered inside a bag in the car. *Id.* at 17:12-13.

---

[1] The Court held an evidentiary hearing on Ms. Sutton's motion to suppress on August 23, 2023. ECF 69; ECF 73. The factual findings here are based on the evidence submitted at that hearing, as well as the Court's assessment of the credibility of the one witness who testified, Corporal John Isoldi.

The car sat in the lot for a few minutes before Mr. Christian drove it to a different parking spot near the side entrance to the hotel. *Id.* at 18:2-5. A short while later, Ms. Sutton exited the hotel, placed a large bag into the trunk, and entered the front passenger seat of the car. *Id.* at 21:19-22:3. Ms. Sutton remained in the car for about a minute and a half "chitchatting" with Mr. Christian before exiting and returning to the hotel. *Id.* at 22:2-6. At no point did Mr. Christian exit the car. *Id.* at 25:11-13. Based on Corporal Isoldi's training and experience, this kind of interaction suggested a drug transaction had just taken place. *Id.* at 24:3-19.

Mr. Christian then drove away, at which point Trooper Wiskeman, who was in another vehicle, immediately conducted a traffic stop. *Id.* at 22:9-13. After pulling over into a nearby parking lot, Mr. Christian exited the car and began to walk away from the scene. *Id.* at 25:18-22. Trooper Wiskeman asked Mr. Christian for consent to search the car, but he refused. *Id.* at 26:14-20. Mr. Christian said that he had been at the hotel to pick up money from a friend but did not know the friend's name. *Id.* at 27:1-3. He also seemed nervous during the brief interaction, like he wanted to distance himself from the car. *Id.* at 27:9-10. Trooper Wiskeman decided to detain the vehicle but permitted Mr. Christian to leave the scene. *Id.* at 27:18-20. As Mr. Christian walked away, Trooper Wiskeman saw Mr. Christian talking on his cell phone. *Id.* at 27-22-28:3. Trooper Wiskeman conveyed all this information to Corporal Isoldi, and, as a result, Corporal Isoldi called in a canine unit. *Id.* at 26:21-22.

The canine unit conducted an exterior sweep of the car and alerted for the odor of narcotics in the trunk. *Id.* at 28:4-7.[2] Law enforcement impounded the car while they sought a warrant for a complete search. *Id.* at 28:8-13. Before any search warrant was obtained and executed, though, Corporal Isoldi sought to identify the

---

[2] As part of her motion to suppress dand at the hearing, Ms. Sutton did not challenge the veracity of the canine detection.

Black woman who placed the bag in the trunk. *Id.* at 28:18-21. After discovering that she was staying in Room 205, Corporal Isoldi and Trooper Joseph Lauricia knocked on the door of the room and identified themselves as state police. *Id.* at 29:1-30:1. Corporal Isoldi asked the person inside to come out of the room so they could speak— nobody answered. *Id.* at 30:1-4. Right after, Corporal Isoldi "began to hear this extremely loud banging from within the room" that sounded like someone "trying to break out of the room into the adjoining room." *Id.* at 30:4-7. Fearing that "whoever was in the room was attempting to escape with evidence" or "destroy evidence," Corporal Isoldi obtained a key to Room 205 from a housekeeper down the hallway and entered the room. *Id.* at 32:11-23.

Upon entering the room, Corporal Isoldi saw Ms. Sutton standing there, "marijuana in a bag laying on the floor," and "pills in a bottle on the table directly behind her." *Id.* at 33:21-24. Corporal Isoldi immediately "froze the room down" and obtained a search warrant. *Id.* at 36:20-23. Ultimately, the Pennsylvania State Police found five vacuum-sealed kilograms of cocaine, marijuana, and pills inside Ms. Sutton's hotel room. *Id.* at 33:21-24, 37:1-11.

Ms. Sutton seeks suppression of all evidence seized from her hotel room on June 10, 2021.

## DISCUSSION & ANALYSIS

Ms. Sutton argues that law enforcement illegally entered her hotel room without a warrant, which tainted the later search warrant and seizure of the evidence from her room. The Court rejects Ms. Sutton's argument and finds that law enforcement's initial entry into her hotel room was lawful.

"Warrantless searches and seizures inside someone's home (or in this case, a hotel room) are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (emphasis in original; citations omitted). The

government does not contend that Ms. Sutton consented to the search; so, to prevail, the government must establish probable cause and exigent circumstances. Ms. Sutton does not contest that probable cause existed for the search, and the Court finds there clearly was probable cause.[3] Therefore, the central question for the Court to resolve is whether exigent circumstances were present to justify the intrusion in the hotel room and subsequent search of the premises. The Court finds that they were.

The Court evaluates "whether exigent circumstances existed by an objective standard; the subjective intent of the officer is irrelevant." *United States v. Lara-Mejia*, 482 F. Supp. 3d 281, 294 (M.D. Pa. 2020) (citation omitted). The government "bears the burden of demonstrating that exigent circumstances justified a warrantless search, and that burden is 'heavy.'" *Id.* (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984)). "Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Coles*, 437 F.3d at 366 (citations omitted). Under these limited circumstances, "the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *Id.* "Whether exigent

---

[3] The Supreme Court has adopted a "totality-of-the-circumstances" approach to evaluating whether probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "Probable cause exists if the evidence available to the officers would warrant a man of reasonable caution in the belief that a felony has been committed." *United States v. Johnson*, No. 19-356, 2022 WL 1240865, at *4 (M.D. Pa. Apr. 27, 2022) (cleaned up). While both parties presume probable cause to search the hotel room, the Court confirms it. Law enforcement observed Ms. Sutton place a bag in the trunk of Mr. Christian's car in the Fairfield Inn parking lot under suspicious circumstances that appeared as a drug transaction; a canine sniff shortly thereafter indicated that there may be drugs inside the trunk; law enforcement learned that Ms. Sutton was staying in Room 205 of the Fairfield Inn; and then, after knocking on the door to that room, law enforcement heard loud banging inside that sounded like someone trying to flee or destroy evidence. That is enough to establish probable cause that controlled substances were in the hotel room.

circumstances exist in a given case is a finding of fact." *Johnson*, 2022 WL 1240865, at \*4 (citations omitted).

Here, law enforcement officers were justified when they entered Ms. Sutton's hotel room without a warrant because it was reasonable for them to believe that she would destroy evidence. The circumstances of this investigation are somewhat unusual and underline the exigency of the situation. To briefly recap, Ms. Sutton was observed placing a bag into Mr. Christian's trunk under suspicious circumstances, which led law enforcement to conduct a traffic stop on Mr. Christian's car. ECF 73, 14:24-15:25, 17:25-18:20, 21:18-23:1, 24:3-19. During the stop, Mr. Christian wanted to "get away from the vehicle," which, in Corporal Isoldi's experience, matches what a person does when they "want to distance [themselves] from anything that involves being arrested." *Id.* at 27:7-14. A canine sniff with a positive "hit" on the trunk bolstered law enforcement's suspicion that there may have been drugs in the bag. *Id.* at 28:4-17. When Mr. Christian walked away from the traffic stop, abandoning his car, he did so with his cell phone in hand, fully capable of alerting Ms. Sutton about everything that just happened. *Id.* at 28:1-3.

The unique nature of the interaction with Mr. Christian spurred Corporal Isoldi to act quickly to identify Ms. Sutton and find out where she was staying. Once Corporal Isoldi discovered Ms. Sutton's room number at the Fairfield Inn, law enforcement performed a "knock and talk"[4] on her hotel room. *Id.* at 29:16-30:16, 31:20-32:3. After knocking on the door, Corporal Isoldi heard "several loud bangs," which "sounded like a sledgehammer hitting the door." *Id.* at 32:7-11. These bangs heightened Corporal Isoldi's concern that Ms. Sutton might destroy (or already was

---

[4] A "knock and talk" is an investigatory procedure by which law enforcement officials "approach a dwelling" and "try to obtain either an occupant's consent to enter (thereby coming within the consent exception to the warrant requirement) or at least to obtain information from an occupant that might enable police to make the requisite evidentiary showing needed to secure a warrant." *United States v. Butler*, 405 F. App'x 652, 656 (3d Cir. 2010).

destroying) evidence.  *Id.* at 32:18-23.  Indeed, he testified that in his experience, people in this exact scenario have destroyed evidence by throwing it out windows, flushing it down toilets, or even swallowing it.  *Id.* at 59:8-18.  At that point, he decided to enter the room.

Considering the totality of these circumstances, law enforcement reasonably believed that Ms. Sutton's destruction of evidence could be imminent, and therefore the warrantless entry into her hotel room did not violate her Fourth Amendment rights.  *See United States v. Carey*, 72 F.4th 521, 532 (3d Cir. 2023) ("Slone's voluntary statements to police during the 'knock and talk' also provided good reason to fear that, unless restrained, she would destroy the drugs before they could return with a warrant." (cleaned up)); *United States v. Wright*, No. 17-228, 2021 WL 2373726, at *11 (W.D. Pa. June 10, 2021) (Hornak, C.J.) (denying motion to suppress and explaining that "[w]hen officers have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." (cleaned up)).[5]

Ms. Sutton argues that the exigent circumstances exception doesn't apply because law enforcement manufactured the threat of evidence destruction.  ECF 57,

---

[5] The government also argues that another exigency existed: that it was reasonable for law enforcement officials to believe that Ms. Sutton might try to escape the scene. ECF 62, p. 11.  This is a bit of a stretch.  Ms. Sutton's hotel room was on the second floor and had windows that did not appear to open.  ECF 73, 59:2-4, 60:3-12.  It would not be reasonable under these circumstances to believe that Ms. Sutton would make a break for it through the window, and any attempt to flee through the hallway would fail.  As for the banging sounds and law enforcement's fear that she may be trying to break her way into an adjoining room, that also wouldn't create a risk of her escape. Even if Ms. Sutton managed to break into the adjoining room—or a series of adjoining rooms—eventually she'd have to exit into the hallway where officers were already standing.  As such, the Court does not consider the risk of flight from the room as an exigent circumstance.

pp. 5-6; ECF 76.  In making this argument, Ms. Sutton relies largely on the Third Circuit's decision in *United States v. Coles*, 437 F.3d 361 (3d Cir. 20016).  In *Coles*, the Third Circuit established that "police cannot avail themselves of the exigent circumstances exception to the warrant requirement if *they* deliberately create the exigent circumstances."  *United States v. Butler*, 405 F. App'x 652, 655 (3d Cir. 2010) (emphasis in original).  But that's not what happened here.

"In assessing whether the police impermissibly create exigent circumstances," the Court must "focus on the reasonableness and propriety of the officers' actions and investigative tactics leading up to the warrantless entry."  *Id.* (cleaned up).  At the heart of Ms. Sutton's challenge is law enforcement's use of the knock and talk.  This technique normally does "not raise Fourth Amendment concerns" because "when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (*e.g.*, walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment."  *Id.* at 656 (cleaned up).  Ms. Sutton argues, though, that it was inappropriate here because law enforcement could have "easily applied for a search warrant and maintained surveillance on the room until the warrant was obtained."  ECF 57, pp. 5-6.  This argument ignores the very real exigency that already existed before law enforcement even knocked on the door, which distinguishes this case from *Coles*.

Remember, Mr. Christian fled the scene of his traffic stop with a cell phone right after engaging in what appeared as a drug transaction.  This scenario created a substantial risk that he might call Ms. Sutton and tell her that the police were onto them, and she should try to destroy any evidence that she might have in her possession.  There was no such imminent threat of evidence destruction in *Coles*.  *Coles*, 437 F.3d at 371 ("Nor is this a case where Coles had detected the law enforcement surveillance, thereby creating an urgent need for the officers to bypass

the warrant requirement."). And Ms. Sutton's response to that knock only elevated that threat and further justified the entry into her room. As a result, it was Ms. Sutton (and Mr. Christian), "not the officers," that "created the exigency." *United States v. Trowbridge*, No. 07-196, 2007 WL 4226385, at *6 (N.D. Tex. Nov. 29, 2007); *see also United States v. Canas*, 462 F. App'x 836, 837 (10th Cir. 2012) ("[L]aw enforcement officers do not create an exigency by conducting a knock and talk instead of obtaining a warrant even when it is reasonably foreseeable that their investigative tactics would lead a drug suspect to destroy evidence." (cleaned up)).

For these reasons, Ms. Sutton's motion to suppress fails.[6]

\*     \*     \*

**AND NOW**, this **12th day of December, 2023**, it is hereby **ORDERED** that, for the reasons stated above, Ms. Sutton's motion to suppress (ECF 51) is **DENIED**.

BY THE COURT

/s/ J. Nicholas Ranjan
United States District Judge

---

[6] Even if law enforcement had violated Ms. Sutton's Fourth Amendment rights under these circumstances, excluding the evidence obtained from her hotel room would not be an appropriate remedy. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Thus, this extreme remedy is reserved for times "[w]hen law enforcement exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights[.]" *United States v. Wright*, 493 F. App'x 265, 271 (3d Cir. 2012) (cleaned up). Law enforcement had an objectively reasonable, good-faith belief that their conduct complied with the Fourth Amendment.